**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RADON SPORT, INC.,** | ) |
|                 **PLAINTIFF,** | ) |
| **v.** | ) |
| | ) |
| **SPORTS CAR CLUB OF AMERICA,** | ) |
| **INC.,** | ) |
| **Serve:  Charles Clark** | ) |
| **5025 Rosewood Dr.** | ) |
| **Roeland Park, KS  66205** | ) |
| | )   **Case No.** `13-2178-EFM-KMH` |
| **SCCA ENTERPRISES, INC.,** | )         _____ |
| **Serve:  Erik T. Skirtmants** | ) |
| **14550 E. Easter Ave., Ste. 400** | ) |
| **Centennial, CO  80112** | ) |
| | )   **JURY TRIAL DEMANDED** |
| **ICP/VARILOC LLC D/B/A CITATION** | ) |
| **ENGINEERING AND** | ) |
| **INDIANAPOLIS COMPETITION** | ) |
| **PRODUCTS, INC.** | ) |
| **Serve:  Richard Pare** | ) |
| **1717 Expo Lane** | ) |
| **Indianapolis, IN  46214** | ) |
| | ) |
| **FAST FORWARD COMPONENTS** | ) |
| **D/B/A PIPER RACE CARS** | ) |
| **Serve:  Doug Learned** | ) |
| **507 Redwood Ave.** | ) |
| **Sand City, CA  93955** | ) |
| | ) |
| **and** | ) |
| | ) |
| **PHILIP CREIGHTON** | ) |
| **MOTORSPORTS, LTD. D/B/A ROAD** | |
| **RACING OVERSTOCK** | |
| **Serve:  Philip Creighton** | |
| **3109 Trotters Parkway** | |
| **Alpharetta, GA  30004** | |

                **DEFENDANTS.**

## ORIGINAL COMPLAINT

Plaintiffs state and allege the following against Defendants, upon knowledge with respect to their own acts and upon information and belief and investigation by counsel.

## INTRODUCTION

1.      This antitrust action arises out of a long-running conspiracy between and among Sport Car Club of America, Inc. ("SCCA"), SCCA Enterprises, Inc. ("Enterprises"), Citation Race Cars ("Citation"), Piper Race Cars ("Piper") and Racing Over Stock ("Racing") (hereinafter "Defendants") to engage in concerted action to prevent Radon Sport from entering the market for Formula Continental race cars.  Defendants' actions reduced the number of constructors of race cars, the supply of race cars and race car parts and had an anti-competitive effect on the race car and parts market and prevent the full and free competition in this market, with no plausible efficiencies.

2.      The Defendants named herein are SCCA, an industry organization and sanctioning body; Enterprises, SCCA's for profit enterprise; and the named race car constructors, all horizontal competitors of plaintiff.

3.      The conspiracy, which began on or about May, 2009 at the latest and continues through the present, directly and adversely impacted the company Plaintiff Radon Sport, Inc., a New Hampshire company

4.      As shown below in detail, Defendants conspired to exclude Radon Sport from entering the market to construct and sell Formula Continental race cars approved to compete in SCCA sanctioned events; conspired to hamper, block and impede Radon Sports ability to sell SCCA sanctioned and approved race cars by engaging in illegal anti-competitive actions, and blocked and impeded Radon Sports ability to develop its planned race car parts business.  The

defendants conspired to use SCCA rule making and sanctioning power to target and exclude Radon Sport race cars to protect their existing sales and markets from competition.  These coordinated efforts by Defendants were designed to and did prevent Radon Sport from entering the Formula Continental race car market, did prevent Radon Sport from selling F2000 race cars and caused Radon Sports customers not to buy Radon Sport race cars. Plaintiff has been driven out of the market, experienced lost sales, revenue and profits, prevented from developing and growing its race car and related accessories and parts business, and, thus, as a result of Defendants' illegal actions, have been injured under Kansas law and these same actions and activity have violated federal law to promote competition including the Sherman Act § 1, 15 U.S.C. § 1.

## THE PARTIES

### PLAINTIFF

5.     Plaintiff is a manufacturer and fabricator of race cars.

6.     Plaintiff Radon Sport, Inc. ("Radon") is a New Hampshire corporation with its headquarters and principal place of business in Lee, New Hampshire. Founded in 2009, Radon fabricates and markets the Radon Rn. 10 race car.  From its New Hampshire corporate headquarters, Radon designed, constructed and marketed its Radon Rn. 10 race car to customers to purchase for use in SCCA sanctioned events.  Due to defendants' illegal conspiracy as alleged herein, Radon was hampered, impeded and prevented from entering the race car market, from selling its race cars and from expanding its business.  As a result, Radon has been injured and suffered damages by reason of the antitrust violations and business torts alleged herein.

## DEFENDANTS

7.      The acts alleged herein that were done by each of the co-conspirators, were fully authorized by each of those co-conspirators, or ordered or committed by duly authorized officers, managers, agents, employees or representatives of each co-conspirator while actively engaged in the management, direction, or control of its affairs.

### Rule Making Defendant

8.      Defendant SCCA is a Kansas corporation with a principal place of business at 6700 SW Topeka Blvd., Building 300, Topeka, KS  66619.  SCCA is a powerful 65,000 person membership association that organizes sanctions and controls amateur road racing events in the United States.  The SCCA is the only national amateur formula car racing sanctioning body in the United States and its rules control its sanctioned events.  The SCCA through its board and officers control the cars that may race in SCCA events.  The Defendants, the SCCA and the current manufactures of SCCA approved race cars acted in concert with and through SCCA and other SCCA entities to implement and enforce the conspiracy alleged herein.  Throughout the relevant time period, Defendants' representatives and employees were active members serving on SCCA Board of Directors, as officers and on other committees directly responsible for the rule making actions that excluded Radon.

### Individual Competitor Defendants

9.      Defendant Enterprises is a Colorado corporation with a principal place of business at 14550 E. Easter Ave., Suite 400, Centennial, CO 80112.  Enterprise meetings are held in conjunction with SCCA meetings and members of the organizations attend joint meetings, have overlapping members, officers and directors.  Enterprises produces its own class of race cars, Formula Enterprises, and is a competitor of Radon Sport.

10.    Defendant Citation Engineering ("Citation") is a division of Indianapolis Competition Products, Inc., and is an Indiana corporation with a principal place of business at 1717 Expo Lane, Indianapolis, IN 46214.  During the relevant time period, Citation engaged in the illegal conspiracy alleged herein.

11.    Defendant Piper Race Cars, ("Piper") is a division of Fast Forward Components a California corporation with a principal place of business at 507 Redwood Ave., Sand City, CA 93955.  During the relevant time period, Piper engaged in the illegal conspiracy alleged herein.

12.    Defendant Philip Creighton Motor Sports, LTD d/b/a Road Racing Overstock with a principal place of business at Alpharetta, Georgia.  During the relevant time period, Road Racing Overstock engaged in the illegal conspiracy alleged herein.

## Unnamed Co-Conspirators and Agents

13.    Various other persons and entities not named herein as Defendants, may have participated as co-conspirators with Defendants.  Plaintiff reserves the right to amend this pleading to name other Defendants.  Each Defendant acted as the agent or for other Defendants with respect to the acts, violations and common course of conduct alleged by Plaintiff.

## JURISDICTION AND VENUE

14.    This civil antitrust action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1, for treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a), for permanent injunctive relief pursuant tot Section 16 of the Clayton Act, 15 U.S.C. § 26, and for full consideration, treble damages, and permanent injunctive relief pursuant to the Kansas Restraint of Trade Act, K.S.A. § 50-101, *et* seq. Court has jurisdiction over Defendant SCCA because this defendant is a Kansas Corporations with principal places of business located in Kansas.

15.     This Court has subject matter jurisdiction over each of the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1337.  This Court further has subject matter jurisdiction over each of the claims in this action pursuant to 28 U.S.C. § 1332, as this action is between citizens of different States, and has an amount in controversy in excess of $75,000.

16.     Venue is proper in this Court pursuant to 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) & (c), because:

(a)     a substantial part of the events giving rise to these claims occurred in this District, including the conspiracy and rule making actions adversely affecting Plaintiff;

(b)     each Defendant is subject to personal jurisdiction in this District;

(c)     Defendants transact business in this District.

17.     Defendants are subject to the personal jurisdiction of this Court because:

(a)      they are amenable to service of process because each transacts business in, has continuous or systematic contacts with, or has sufficient minimum contacts in the United States sufficient to satisfy due process;

(b)     certain Defendants are registered with the Kansas Secretary of State to do business in the State of Kansas and or have a principal place of business in Kansas;

(c)      they are amenable to service of process because each transacts business in, has continuous or systematic contacts with, or has sufficient minimum contacts in this District, and Defendants headquartered outside this District are nevertheless engaged in the business of developing, manufacturing, and/or selling race cars throughout the United States, including in this District;

(d)     they are amenable to service of process because each Defendant belonged to the conspiracy alleged in this Complaint and one or more of them, and their co-conspirators,

performed unlawful acts in furtherance of the conspiracy in this District including, without limitation, the conspiratorial actions that adversely impact Platinff;

(e)      they are amenable to service of process pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and/or the Kansas Long Arm Statute, K.S.A. 60-308 because each Defendant, either personally or through their co-conspirators in furtherance of the conspiracy, has sufficient minimum contacts with Kansas, including that each Defendant: transacted (and continues to transact) business in this state, committed tortious acts within Kansas; entered into contracts with a Kansas resident that were to be performed in whole or in part in Kansas; and caused injury in Kansas arising out of acts or omissions outside of Kansas while Defendants were engaged in solicitation or service activities within Kansas.  In addition, Defendants have submitted to the jurisdiction of the Court because of their continuous and systematic contacts with Kansas; and

(f)      they and one or more of their co-conspirators contracted to supply services or goods, including race car and race car parts, or have agents who contracted to supply materials or goods, including race cars or race car parts, in this District; money flowed from Plaintiff in Kansas to pay Defendants and their co-conspirators for race cars and race car parts; Defendants and one or more of their co-conspirators transact business in the District or have agents who transact business on their behalf in the District in furtherance of the conspiracy; Defendants and their coconspirators committed unlawful acts or caused one or more unlawful acts to be done, or consequences to occur, in the District; and Defendants and their co-conspirators engaged in unlawful conduct described below outside of the District causing injury to Plaintiff in the District.

## TRADE AND COMMERCE

18.     During the Relevant Period, Defendants and their co-conspirators engaged in business that affects or is within the flow of interstate commerce, and the effect of that business on interstate commerce is substantial.  In particular:

(a)     Defendants and their co-conspirators sold and shipped race cars and race car parts in a continuous and uninterrupted flow in interstate commerce to customers located in States other than the States in which the Defendants produced the race car and race car parts;

(b)     Defendants' and their co-conspirators actions through Defendant SCCA in excluding Plaintiff from sanctioned events affected customers and consumers in other states;

(c)     data, information, correspondence and/or financial material were exchanged between each Defendant in the State in which each is located, incorporated, or has its principal place of business and other States; and

(c)     money flowed between banks outside of the State in which each Defendant is located, incorporated, or has its principal place of business and other States.

The effect of Defendants' and/or their co-conspirators' anticompetitive conduct on United States commerce gives rise to Plaintiff's claims.

## THE RELEVANT PRODUCT AND RELEVANT MARKET

19.     SCCA is a powerful 65,000 person membership association that organizes sanctions and controls amateur road racing events in the United States.  The SCCA is the only national amateur formula car racing sanctioning body in the United States and its rules control its sanctioned events.  The SCCA through its board and officers control the cars that may race in SCCA sanctioned events.

20.     Absent SCCA approval of a race car design, it cannot compete in SCCA sanctioned events.  SCCA has a dominant position in the relevant market,  races events.

21.     The relevant product are race cars sanctioned to compete in SCCA sanctioned events and related parts.

22.     The relevant market is race events that race under Formula Continental Rules.

## THE AMATEUR ROAD RACING INDUSTRY

23.     The SCCA is the only national amateur formula car racing sanctioning body in the country.  Each year, the SCCA sponsors hundreds of amateur road race events for formula race cars.  The SCCA controls access to its races and race venues: a race car must be approved, or "homologated" before it may participate in a SCCA formula car racing event.

24.     As the dominant sanctioning body of amateur road racing events, the SCCA determines who races and what race cars and equipment are approved for its races.  A car owner has little opportunity to use his race car if it does not receive SCCA approval.

25.     Because SCCA controls the large majority of amateur road races and determines which race vehicles are approved for SCCA races, a car manufacturer has little opportunity to sell cars that are not SCCA approved.

26.     SCCA control the technical regulations for many car classes in the United States, including the Formula Continental ("FC") regulations that govern the Radon Rn.10 race car. These regulations are used by other organizations, including  the F2000 Pro series, one major market for Radon Sport's products.

27.     Within the SCCA, the details of the technical regulations are controlled by the Competition Racing Board ("CRB") and a subcommittee, the Formula and Sports Racing Advisory Committee ("F/SRAC")

28.     Defendant Enterprises, the SCCA's for-profit subsidiary, is in the business of selling race cars in the United States, including formula-style race cars.  Enterprises is a direct competitor of Radon.  Enterprises' competitor formula car is known as the Formula Enterprises, or "FE," and are very similar in appearance and performance to cars built for the Formula Continental (FC) class. The customer base for both cars is essentially the same..

29.     The unique structural characteristics of the amateur road racing market in the United States, including SCCA's approval of all cars used in its sanctioned events, make the market especially susceptible to anticompetitive conduct, including concerted refusals to deal with new market entrants.

30.     SCCA and the individual competitor defendants conspired to prevent Radon from entering and competing in the market for F2000 race cars by manipulating the SCCA rules applicable to the F2000 cars to specifically exclude Radon and its design for the Radon Rn.10 race car.  Defendants rules changes to exclude Radon were not objective, were unduly restrictive, were influenced by Radon's competitors, and were imposed for arbitrary and capricious reason. Further, the Defendants rule changes were imposed through the use of unfair and improper practices and procedures, including ousting rule making and approving board and committee members who supported allowing Radon cars to compete and replacing those members with personnel opposed to Radon cars—all under the influence of Radon's competitors.

## RADON SPORT

31.     In 2009, Radon began to develop designs for a race car to compete in SCCA amateur road racing events.

32.     In May of 2009, Radon communicated with the SCCA's CRB about the technical requirements for the car it was developing, the Radon Rn.10.

33.     The Radon Rn.10 was a new design that included additional driver safety features and other race car design improvements.

34.     In July of 2009, the CRB advised Radon that a rules revision for the Formula Continental ("FC") cars and the Formula Ford ("FF") cars was being considered and sent Radon a draft of the rules changes.

35.     In October of 2009, the CRB sent Radon the final version of the FF/FC rules changes as approved by the SCCA Board of Directors.  The rules change was a major revision representing two years worth of work and study by the F/SRAC Advisory Committee.

36.     Following notification of the rules revision, Radon adapted its' preliminary designs for the Radon Rn.10 to comply with the revised rules provided by the SCCA.  The SCCA revised rules for FF/FC took effect January 1, 2010.

37.     Relying on the rules and technical requirement adopted by the SCCA, Radon developed and constructed the Radon Rn.10, its SCCA rules compliant product to be sold to SCCA members and to compete in SCCA events.

38.     In July of 2010, Radon's race car, the Radon Rn.10, designed to compete in SCCA events is viewed by many F2000 pro series competitors and photographs of the new car are exchanged among racing enthusiasts.

39.     In July of 2010, Richard Pare, an engineer associated with Citation Race Cars, a competitor of the Radon Rn. 10, submitted a new rules change proposal to SCCA that would make the Radon Rn.10 non-compliant with SCCA requirements and unable to compete in SCCA events.

40.     In September of 2010, the SCCA through its online newsletter Fastrack News publishes several new proposed rule changes that include several rules specifically targeting

features of the Radon Rn.10, all of which would make the Radon Rn.10 unable to compete in SCCA events and would have the effect of killing the sales of the Radon Rn.10.

41.     The SCCA, through its board members and officers, along with input and direction from the individual competitor defendants, conspired to develop and approve the new rule changes that would have the effect of targeting the Radon Rn.10 design, making it non-compliant with the new rules and making the Radon Rn.10 illegal to complete in SCCA events, all of which would have the effect of discouraging customers from purchasing the Radon Rn.10, killing Radon's sales and forcing Radon from the race car market, thereby protecting the sales of existing race car constructors and those race car owners who owned the older, less desirable cars.

42.     On September 20, 2010, SCCA convened a Constructors Meeting at the 2010 SCCA Runoffs (National Championships) in Elkhart Lake, Wisconsin.  The FC manufacturers and key members of SCCA attended.  The night before the meeting, representatives of all of the constructors, including Citation, Piper, Ralph Firman Racing (RFR), and Elan  gathered for dinner. Radon was not included.  At the gathering, the SCCA and the constructors conspired and agreed to work together to make the Radon Rn.10 design illegal under SCCA rules while protecting and keeping the existing constructors' cars technically compliant.

43.     On September 20, 2010, at the SCCA Constructors meeting, the Radon Rn.10 design was attacked by the other competitor constructors.  Radon attended and offered ideas for compromise that were not allowed to be considered.

44.     In October of 2010, Radon submits the Radon Rn.10 design to the SCCA Court of Appeals under its "Compliance Review" procedure to ask for an official ruling showing the Rn.10 design legal.

45.     In November of 2010, SCCA announced that the proposed rule changes have been withdrawn.

46.     On November 23, 2010, Radon received the SCCA Court of Appeals Compliance Review decision allowing one of three key Radon Rn.10 design features, but rejecting two others.

47.     On January 1, 2011, Radon submitted a modified design to the SCCA Court of Appeals.

48.     On February 23, 2011, Radon received the SCCA Court of Appeals Compliance Review decision finding the Radon Rn.10 formula car design fully compliant with all SCCA technical and design requirements.

49.     In reliance on SCCA's determination that the Radon Rn.10 was technically compliant, Radon developed and began to construct Radon Rn.10 race cars.

50.     Radon fabricates and begins selling Radon Rn.10 cars to customers to race in SCCA events.

51.     In July of 2011, Radon received the preliminary "homologation" of the Radon Rn.10, what SCCA terms the "two race letter."

52.     In July of 2011, Radon raced the Radon Rn. 10 at a F2000 series race at the Mosport race weekend, placing 5th out of 30 entrants.

53.     In August of 2011, Radon received notice from the SCCA CRB of a new rules change proposal, with specific clauses attacking the Radon Rn.10 design and having the effect of making Radon Rn.10 design non-compliant.

54.     SCCA published the new proposed FF/FC rules changes in the September issue of Fastrack.

55.     In the Fall of 2011, SCCA adopts a new regulation concerning composite side anti-intrusion panels, a regulation not previously published by SCCA, and not backed by any engineering data or safety analysis.  The new side anti-intrusion regulation could be interpreted to make the Radon Rn.10 non-compliant.

56.     The SCCA and the individual competitor defendants actions to alter and change the SCCA rules to make the Radon Rn.10 car non-compliant with SCCA requirements created uncertainty with Radon customers and injured and effected Radon sales and the future prospects of its continued business.

57.     SCCA representatives of the individual competitor defendants conspired to removes the members of the CRB who had previously approved the Radon Rn. 10 design.

58.     On or about August 10, 2012, SCCA publishes proposed rules changes to the FF/FC that are slightly altered from 2011 proposed rules change.  The 2012 rules change make illegal several design features of the Radon Rn.10.

59.     On or about August of 2012, in response to an inquiry by a F2000 pro series car owner about the 2012 rules change, the SCCA conspired with John LaRue of Citation Race Cars, a Radon competitor, and a member of the F/SRAC committee to defend the new rules change that excludes Radon from the market.

60.     In August of 2012, Jim Wheeler, the newly appointed head of the CRB conspires with John LaRue of Citation Race Cars to prevent and discourage Radon from entering and competing in the F2000 market.

61.     In the Fall of 2012, SCCA approves the new rules change making all existing Radon Rn.10 cars non-compliant and killing future sales of the Radon Rn.10.

62.     There is substantial overlap in membership and leadership between SCCA, Enterprises and the individual competitor defendants.

63.     SCCA Board Members and Officers can be members of multiple groups and officers between the groups are often shared.  For example, Phil Creighton owns Road Racing Overstock, a direct competitor of Radon Sport, but also serves on the SCCA Board of Directors, Brandon Dixon manufactures many of the components for Citation Race Cars but serves on the F/SRAC.

64.     In implementing the rules change scheme discussed herein, defendants have conspired with non-member co-conspirators.  For example, SCCA and the named individual competitor defendants conspired with Ralph Firman Racing (RFR) to implement its unlawful concerted refusal to deal and boycott of Radon.

### DEFENDANTS' SHAM "PROPOSED RULE CHANGE" PLAN

65.     Following two years worth of study and work, SCCA introduced and approved new rules for the FC race cars that went into effect on January 1, 2010.

66.     Following notification of the January 1, 2010 rules change, Radon redesigned its Radon Rn.10 race car to meet the new rule requirements and began to construct and sell its new and improved race cars to compete in SCCA sanctioned events.

67.     As Radon began to sell and promote its Radon Rn.10 race car, fully compliant with the new SCCA rules, the individual defendant competitors and conspirators, working through and with the SCCA, conspired to eliminate Radon as a competitor by creating and implementing new rules changes with the effect of making the Radon Rn.10 illegal.

## DEFENDANTS' AGREEMENT WAS SUCCESSFUL

68.     Defendants' agreement to prevent Radon from entering the market and selling Radon Rn. 10 cars was successful.  From 2009 to 2011 Radon sold 6 race cars, more than any other FF/FC manufacturer.  After the defendants conspired to change the SCCA rules making Radon Rn.10 vehicles non-complaint Radon was unable to sell any additional cars and is prevented from competing with the defendants.

69.     As a result of the defendants' boycott of Radon's race car, Radon has lost sales, revenue, future sales and profits and new and related business.

## DEFENDANTS' ACTIONS WERE A KNOWING VIOLATION
## OF THE KANSAS RESTRAINT OF TRADE ACT

70.     Defendants knew that their activities flagrantly violated the antitrust laws.  For example, conspirators Steve Lathrop, owner of Citation Race Cars conspired with Phil Creighton, an SCCA Director to eliminate Radon from the marketplace by implementing rules changes that specifically targeted the Radon Rn. 10.

71.     The effect of Defendants' conduct as described herein was intended to and in fact did prevent Radon from competing in the marketplace and continuing its sales of the Radon Rn. 10.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

72.     Throughout the relevant time period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful and self-concealing conduct.  Although among each other Defendants freely admitted that the purpose of their collective conduct was to prevent Radon from entering the market and competing in the sales of F2000 race cars.

73.     Defendants and their co-conspirators conducted their conspiracy secretly, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently

concealed their activities through various other means and methods designed to avoid detection. These included: meeting secretly to discuss collective plans to enact rules changes directed at making the Radon Rn. 10 non-compliant; concealing minutes and records of these meetings, or not keeping written records so as to avoid detection; concealing information from newsletters like Fasttrack; and deceiving other members of the SCCA about the purpose of their proposed rules changes, which was—unbeknown to outsiders like Plaintiff—not primarily for the purpose of racing or improving or consolidating the rules, improving efficiency, improving cost savings, safety, or any other plausible pro-competitive reason, but actually for the purpose of preventing Radon from entering the market and selling the Radon Rn. 10.   Examples of Defendants' fraudulent concealment are alleged more specifically throughout this Complaint.

74.     As a result of Defendants' and their co-conspirators' fraudulent concealment, all applicable statutes of limitations affecting Plaintiffs have been tolled.  Plaintiffs did not discover, nor could they have discovered through reasonable diligence, that Defendants and their co-conspirators were violating federal and Kansas law.  Plaintiffs could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection and affirmatively conceal such violations.

75.     As a result of the fraudulent concealment of the conspiracy, Plaintiffs assert the tolling of the applicable statute of limitations with respect to any claims Plaintiffs have arising out of the conduct alleged in this Complaint.

## COUNT ONE

**CONSPRIACY TO ENGAGE IN A CONCERTED REFUSAL TO DEAL AND/OR GROUP BOYCOTT, IN VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1.**
**[On Behalf of Plaintiff Against All Defendants]**

76.     Plaintiffs re-allege every paragraph above as if fully set forth herein.

77.     From at least as early as 2009, continuing to the present, with precise dates to be ascertained in discovery and proved at trial, Defendants and other unnamed co-conspirators actively engaged in an unlawful agreement, understanding and conspiracy to refuse to deal with Plaintiff Radon.

78.     The contract, combination and conspiracy among Defendants and their co-conspirators consisted of a continuing course, pattern and practice of conduct regarding the rule changes, amendments and imposition of new rules, all to exclude Radon from the market in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## COUNT TWO

**VIOLATION OF THE KANSAS RESTRAINT OF TRADE ACT**
**K.S.A. 50-101 ET SEQ.**
**[On Behalf of Plaintiff Against All Defendants]**

79.     Plaintiffs re-allege every paragraph above as if fully set forth herein.

80.     From at least as early as 2009, continuing to the present, with precise dates to be ascertained in discovery and proved at trial, Defendants and other unnamed co-conspirators actively engaged in an unlawful arrangement, contract, agreement, trust, or combination designed to create or carry out restrictions in trade or commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state; to increase the price of merchandise; to prevent competition in the manufacture, making, sale of

18

merchandise; to make or enter into, or execute or carry out , any contract, obligation or agreement of any kind or description by which such person shall agree to pool, combine or unite any interest they may have in connection with the manufacture, sale or transportation of any such article or commodity, that such person's price in any manner is affected, all in violation of the Kansas Restraint of Trade Act, K.S.A. 50-101 and 50-112.

81.     Defendants each gave their assent to, and acted in furtherance of, activities prohibited by the Kansas Restraint of Trade Act.   Each Defendant is fully liable for all acts in furtherance of the conspiracy committed by each other co-conspirator, and by each co-conspirator's agents, employees, representatives, trade groups and other associates, whether named or unnamed in this Complaint.

82.     Defendants' actions in violation of the Kansas Restraint of Trade Act include, but are not limited to: agreement to, and actual maintenance and policing of, rules changes and proposed rules changes designed to prevent Radon from entering and competing in the F2000 race car market.   The purpose and effect of all of these actions has been to restrain and prevent the full and fair competition in the sale of race cars and parts.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS
### [On Behalf of Plaintiff Against All Defendants]

83.     Following the January 1, 2010 SCCA rules change, Radon adapted its design of the Radon Rn. 10 and began successfully selling its race cars to customers to race in SCCA sanctioned events.

84.     Radon entered into contracts for the sales of its Radon Rn. 10 race car with customers.

85.     Based on its improved design, Radon reasonably expected to continue sales of the Radon Rn. 10 and expand and grow those sales to meet marketplace demand for a new, improved and safer FC race car.

86.     The defendants knew of Radon's new and improved design, its sales of the Radon Rn. 10 and the future prospects of the continued and future sales of the Radon Rn. 10.

87.     But for the illegal conspiracy entered into by the defendants resulting in the additional rules changes directed at keeping the Radon Rn. 10 out of SCCA sanction events, Radon would have continued to sell and expand its sales of the Radon Rn. 10 race car, enjoying additional sales, revenue, profits and future business opportunities.

88.     Defendants' actions to prevent Radon for entering the market were unlawful.

89.     As a direct result of defendants' unlawful conspiracy, plaintiff suffered damages as detailed in this Complaint.

**COUNT FOUR**

**NEGLIGENT MISREPRESENTATION**
**[On Behalf of Plaintiff Against All Defendants]**

90.     The individual competitor defendants sell FC race cars and components and to protect their sales and profits did not want Radon to compete in this market.

91.     Through concerted action and illegal conspiracies, the individual competitor defendants negligently provided false information to the SCCA and its various rule making boards and subcommittees that had the effect and result of new SCCA rules for FC Championship race cars.

92.     These defendants' negligent misrepresentations were relied upon by the SCCA and resulted in rules changes that killed Radon's sales of the Radon Rn. 10.

93.    These defendants failed to exercise reasonable care in providing information to the SCCA rule making boards and committees, resulting in the exclusionary rules imposed against Radon and all resulting in damage and loss to plaintiff.

94.    Defendants affirmatively concealed from Plaintiffs and the general public the existence of their illegal understandings and agreements through misrepresentations and omissions regarding this conspiracy.

95.    As a direct and proximate result of Defendants' conduct, Plaintiff was prevented from entering the F2000 race car market and continuing its sales of the Radon Rn. 10 car.  The anti-competitive effect of Defendants' illegal arrangements, contracts, agreements, combination and conspiracy was to distort and artificially inflate the prices that consumers paid for F2000 race cars, to reduce the available supply of race cars for consumers, to limit consumer choices, to reduce consumer safety, to prevent innovation and new entrants into the market and to prevent competition from Radon, competition that would benefit consumers.  Defendants' actions further restrained and controlled the full and free competition in the market for race cars and race car parts.

96.    Defendants' actions deprived Plaintiff of the right to enter the market for race cars and parts, to develop other competing products and make other financial and business decisions in a full and free competitive market for race cars and race car parts and products, resulting in a loss of sales, revenue, future profits and future business opportunities.

97.    As a result of defendants' actions, Plaintiffs thereby suffered loss, injury and damage in an amount greater than $75,000, according to proof at trial.

98.     Pursuant to K.S.A. 50-108 and 50-161, Plaintiffs further seek to recover treble the damages they sustained as a result of Defendants' conduct, as well as attorneys' fees, costs, and any additional remedies provided by law.

99.     There exists a significant threat of injury to Plaintiff because Defendants' anticompetitive actions continue through today and/or are likely to reoccur.

100.     Pursuant to K.S.A. 50-161, Plaintiffs therefore seek to have Defendants enjoined from directly or indirectly continuing the conspiracy and/or the agreement to prevent Radon and other car fabricators from entering the market, competing in the market and lowering the price of race cars, parts and products for all consumers, through SCCA sanctioning regulatory action, rules changes, or rules designed to prevent competition.  Further, plaintiff seeks to enjoin the effect and enforcement of the SCCA FC rules changes effected after January 1, 2010, and any subsequent rules that unfairly and unlawfully exclude Radon

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand:

1.      That the Court declare, adjudge, and decree that Defendants have committed the violations of Federal and Kansas law alleged herein by declaring that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, were in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the Kansas Restraint of Trade Act, K.S.A. 50-101, et seq.;

2.      That the Court award damages sustained by Plaintiffs in an amount to be proved at trial, to be trebled according to law, plus interest, including prejudgment and post-judgment interest, attorneys' fees and costs of suit, and such other and further relief as this Court may deem just and proper;

3.     That Defendants, their directors, officers, employees, agents, successors and members be enjoined from continuing in any agreement or conspiracy to limit Radon's entry into the race car market, race car parts market or prevent the Radon Rn. 10 car from competing in SCCA events, as detailed herein; and

4.     That The Illegal Rules Changes Implemented After January 1, 2010, And Any subsequent rules unfairly or unlawfully excluding Radon, be determined to be illegal and anti-competitive and therefore void and unenforceable;

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial.

## JURY DEMAND

Plaintiffs respectfully demand a jury trial on all issues so triable.

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Steve Six
Patrick J. Stueve — KS Bar # 13847
stueve@stuevesiegel.com
Steve Six — KS Bar # 16151
six@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:  816-714-7110
Facsimile:  816-714-7101

**COUNSEL FOR PLAINTIFF RADON SPORT**